```
 1  MARCO QUAZZO (State Bar No. 142182)
    MBV LAW LLP
 2  855 Front Street
    San Francisco, CA 94111
 3  Telephone:   (415) 781-4400
    Facsimile:   (415) 989-5143
 4
    Attorneys for Defendant
 5  HEALTH IMAGING, INC.
 6
 7
 8              IN THE UNITED STATES DISTRICT COURT
 9             FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                        SAN JOSE DIVISION
```

| | |
|---|---|
| PET IMAGING OF SAN JOSE, LLC, a California limited liability company,<br><br>             Plaintiff,<br><br>     v.<br><br>HEALTH IMAGING, INC., a New York corporation,<br><br>             Defendant. | Case No. C08 00154 JF<br><br>**COUNTERCLAIM OF HEALTH IMAGING INC. FOR BREACH OF CONTRACT; PROMISSORY ESTOPPEL; AND UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |
| HEALTH IMAGING, INC., a New York corporation,<br><br>             Counter-Claimant,<br><br>     v.<br><br>PET IMAGING OF SAN JOSE, LLC, a California limited liability company,<br><br>             Counter-Defendant. | |

COUNTERCLAIM OF HEALTH IMAGING, INC. TO COMPLAINT – CASE NO. C08 00154 JF
94317.01\389496.DOCv3

Health Imaging, Inc. ("Health Imaging" or "Counter-Claimant") asserts the following counter claim against PET Imaging of San Jose, LLC:

## THE PARTIES

1. Health Imaging is a corporation organized under the laws of the State of New York, with its principal place of business located in Sodus, New York.

2. PET Imaging is a limited liability company organized under the laws of the State of California, with its principal place of business located in San Jose, California.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## GENERAL ALLEGATIONS

4. In or about July 2004, the parties agreed to a merger in principle (the "Merger"). Under the terms of the merger, Health Imaging was to acquire PET Imaging and several affiliated entities. Health Imaging's principal, Bijan Farhangui, was to receive a substantial cash payout in connection with the proposed Merger.

5. As one of the conditions to consummating the proposed Merger, PET Imaging agreed to provide accurate and complete financial statements. PET Imaging encountered major difficulties in fulfilling this condition. As a result, the parties participated in a meeting in New York in or about December 2005 (the "New York Meeting"). In attendance at the New York Meeting were, among others, Bijan Farhangui on behalf of PET Imaging, Craig Danzig and Janet Miskulin on behalf of Health Imaging, Rocco Platino on behalf of the Rotenberg & Co. accounting firm, Ken Conte on behalf of the Argilus investment bank, and Scott Bluestein of Laurus Capital Management (which was providing financing for the proposed Merger).

6. At the New York Meeting, Laurus informed PET Imaging that it intended to withdraw its financing for the proposed Merger because PET Imaging had been unable to provide accurate and complete financial statements. Health Imaging was also prepared to cancel the proposed Merger for this reason. Laurus insisted that Health Imaging provide certified, audited financial statements if the proposed Merger were to proceed. Mr. Farhangui, who stood to gain a substantial sum of money from the proposed Merger, agreed on behalf of PET Imaging to be responsible for the full cost of these financial statements.

7. PET Imaging had previously been involved in a business transaction with Health Imaging involving the possible purchase of a used Siemens 2-slice PET/CT system. Because that transaction never occurred, Health Imaging had in its possession, at the time of the New York Meeting, a purchase deposit from PET Imaging in the amount of $158,000.

8. Mr. Danzig advised Mr. Farhangui following the New York Meeting that it would cost between $80,000 and $125,000 for PET Imaging to prepare certified, audited financial statements. Mr. Farhangui specifically authorized Mr. Danzig to pay for various due diligence expenses associated with the proposed Merger, including without limitation the cost of preparing certified, audited financial statements, by utilizing the $158,000 in funds that Health Imaging had previously received from PET Imaging. Thereafter, Health Imaging did so.

9. On PET Imaging's behalf, Health Imaging paid more than $85,000 to accounting professionals towards the preparation of certified, audited financial statements for PET Imaging. Health Imaging paid additional due diligence expenses on PET Imaging's behalf, totaling in excess of $158,000.

10. In or about April 2006, the proposed Merger was canceled. Despite the best efforts of Health Imaging and various accounting professionals, Health Imaging was unable to obtain certified, audited financial statements from PET Imaging.

11. After cancellation of the proposed Merger, Health Imaging informed PET Imaging of the due diligence expenses that it had paid on PET Imaging's behalf, pursuant to the agreement reached at the New York Meeting. At the insistence of PET Imaging, Health Imaging also returned $85,000 of the monies it had received from PET Imaging.

12. Even though PET Imaging was aware that its $158,000 in deposit monies had been applied toward due diligence costs related to the Merger, PET Imaging filed suit in 2008 seeking full repayment. PET Imaging has not otherwise reimbursed Health Imaging for the due diligence expenses it paid on PET Imaging's behalf.

///

///

///

**FIRST CLAIM**
**(Breach of Oral Contract)**

13. Counter-Claimant incorporates herein by reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 12 above.

14. In or about December 2005, Health Imaging and PET Imaging entered into an oral agreement whereby PET Imaging agreed to pay for certain due diligence expenses relating to the proposed Merger, including without limitation the cost of preparing certified, audited financial statements for PET Imaging. Under the terms of the agreement, PET Imaging authorized Health Imaging to utilize monies previously received from PET Imaging, in the amount of $158,000, to pay for the preparation of Health Imaging's financial statements and other due diligence expenses. In return, Health Imaging agreed to continue its efforts to consummate the proposed Merger.

15. Health Imaging has performed all of its obligations under the agreement, except for those obligations that PET Imaging has prevented Health Imaging from performing. In particular, Health Imaging continued its efforts for a period of several months to consummate the proposed Merger, and paid due diligence expenses on behalf of PET Imaging in an amount greater than $158,000.

16. In or about July 2007, PET Imaging breached the oral agreement by demanding repayment of the $158,000 in funds that PET Imaging had authorized Health Imaging to utilize to pay PET Imaging's expenses in connection with the proposed Merger. PET Imaging further breached the agreement by refusing to pay the due diligence expenses that Health Imaging paid on PET Imaging's behalf .

17. As a result of PET Imaging's breach, Health Imaging has been damaged in an amount of $85,000, which represents the portion of the funds that PET Imaging earmarked for due diligence costs that Health Imaging returned to PET Imaging.

WHEREFORE, Counter-Claimant prays for judgment as set forth below.

/ / /

/ / /

/ / /

## SECOND CLAIM
### (Promissory Estoppel)

18. Counter-Claimant incorporates herein by reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 17 above.

19. Health Imaging is entitled to relief under the doctrine of promissory estoppel. PET Imaging made a promise to pay the costs associated with the preparation of certified, audited financial statements and other due diligence expenses associated with the proposed Merger. PET Imaging further authorized Health Imaging to pay such due diligence expenses on PET Imaging's behalf, which Health Imaging did, from funds in the amount of $158,000 that PET Imaging had previously provided to Health Imaging for a different purpose.

20. PET Imaging expected or should have reasonably expected that its promise and authorization would induce Health Image to pay PET Imaging's due diligence expenses. PET Imaging's promise and authorization did in fact induce such action by Health Imaging, which reasonably relied on PET Imaging's promise and authorization. PET Imaging's promise must be enforced to prevent injustice.

WHEREFORE, Counter-Claimant prays for judgment as set forth below.

## THIRD CLAIM
### (Unjust Enrichment)

21. Counter-Claimant incorporates herein by reference, as though set forth in full, each and every allegation contained in paragraphs 1 through 20 above.

22. Health Imaging provided certain consideration to PET Imaging and/or third parties at PET Imaging's request, and PET Imaging has benefited therefrom. The consideration includes payments that Health Imaging made to third parties on PET Imaging's behalf, in a total amount in excess of $158,000, for accounting fees and other due diligence expenses relating to the proposed Merger, as well as three payments that Health Imaging made to PET Imaging, totaling $85,000, after the cancellation of the proposed Merger.

23. PET Imaging has received the benefits of such consideration, and profited therefrom, and has retained benefits which in justice and equity belong to Health Imaging. PET Imaging's

4
COUNTERCLAIM OF HEALTH IMAGING, INC. – CASE NO. C08 00154 JF

94317.01/389496.DOCv3

retention of these benefits is unjust. Injustice can be avoided only if PET Imaging pays Health Imaging the value of these benefits, according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Health Imaging prays for judgment as follows:

1. For compensatory damages in an amount of at least $85,000;
2. For prejudgment interest;
3. For costs of suit herein; and
4. For such other and further relief as the Court may deem just and proper.

In addition, Health Imaging hereby demands trial by jury on all claims triable to a jury.

DATED: April 11, 2008            MBV LAW LLP


By:  _____/s/_____
MARCO QUAZZO
Attorneys for Defendant
HEALTH IMAGING, INC.